IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| UNITED STATES OF AMERICA | * |
|---|---|
| v. | * CRIMINAL NO. PWG-13-544 |
| JULIUS VALENTINE WILLIAMS, | * |
| Defendant | * |

## MEMORANDUM OPINION

The Court has received Defendant's Emergency Motion for Reconsideration of Bond (the "Emergency Motion"), ECF No. 92. The Court has reviewed the Emergency Motion and the Opposition thereto, ECF No. 93. No hearing is deemed necessary. Local Rules 105.6 and 207 (D. Md.) The Court hereby DENIES the Emergency Motion.

### I. Relevant Procedural History

As set forth in the submissions of the parties, the release history of Defendant is well documented. On October 7, 2013, Mr. Williams appeared before the Court on charges of filing false tax returns. He was released on conditions. ECF No. 8. Seven months later, the Court felt compelled to order Defendant's detention in light of evidence that Mr. Williams was continuing to engage in the same unlawful misconduct. After subsequently being found guilty of tax fraud and identity theft, and serving years of incarceration, Mr. Williams was again offered the opportunity to be free in the community under explicit terms of supervised release. Nonetheless, within seven months of his release, his supervising officials were seeking his detention. This time, it was alleged that Mr. Williams was not reporting as required, not paying restitution as

ordered, refusing to provide required documents as directed, and was again preparing and submitting false tax documents. At the initial appearance held on May 2, 2019, the Court released Mr. Williams on conditions.

By November 2019, another petition was filed, alleging that Mr. Williams had been arrested and charged by the State of Georgia with filing fraudulent tax statements. The parties and the Court agreed to delay addressing these concerns, yet before a hearing could held, another petition was filed noting that Mr. Williams had been out of contact for months with both his federal and State of Georgia supervising officers. On February 7, 2020, this Court issued a warrant for Mr. Williams' arrest.

A hearing was held on February 11, 2020, wherein the Court was persuaded that Mr. Williams' history of misconduct on release was repeating itself. Mr. Williams' post-conviction conduct was mirroring his pre-conviction conduct years earlier. The Government proffered evidence to believe that Mr. Williams was resuming his involvement in criminal activity and was refusing to allow meaningful supervision while in the community. Moreover, as a person under supervision, Mr. Williams was not able to demonstrate by "clear and convincing evidence" that he would appear for court as told, follow the lawful instructions of the Court or of his supervising officer, or to otherwise obey the law. Order of Detention, February 11, 2020, ECF No. 85; Fed. R. Crim. P. 32.1(a)(6). It is within this context, that Defendant's Emergency Motion is written.

**II.     The COVID-19 Pandemic**

It is understandable for any person presently incarcerated during the pendency of the global COVID-19 pandemic to want an immediate release. Ordinarily, the Court does not

"recalculate" a decision to release or to detain a defendant in the absence of new information that was not available at the time of the original determination. Under the Bail Reform Act the Court is required to consider a host of factors which might inform the question of detention, including changed circumstances.

> The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. Section 3142(f). While the deadly virus may have been in development, the national and international impact of COVID-19 was not on the radar of the parties or the Court at the time of the detention hearing held on February 11. The impact of this virus has been universal, affecting nearly all aspects of life in the District of Maryland. Its existence is unquestionably "material."

The present knowledge of COVID-19 is amply documented by the voluminous references set forth in the Emergency Motion. Virtually every sector of public life has been affected, with both private and governmental operations being scaled back to a minimum or shuttered altogether. Experts tell us that the rate of infections has yet to peak in the United States, so conditions are expected to worsen. The Court accepts that as a 67-year-old person, Mr. Williams is a member of a group considered more vulnerable to contracting this deadly virus than others.

The Court is mindful that it bears a fiduciary responsibility to that those that are detained in jails and prisons. The incarcerated look to the Courts for protection of their health, welfare

and personal rights in general. However, the Courts are not on the front line. That space is rightly occupied by corrections officials and their administration. On this record, there is no suggestion of mistreatment, dereliction of duty, mismanagement, or other concern. To the contrary, the Government's Opposition speaks with specificity about the absence of an effect of the virus on Mr. Williams, whereas the Emergency Motion merely raises general concerns that are true for every older person who is incarcerated.

Defendant rightfully reminds the Court that those in detention facilities "have poorer health than the general population, and even at the best of times, medical care is limited in these facilities. Many people who are incarcerated also have chronic conditions, like diabetes or HIV, which makes them vulnerable to severe forms of COVID 19." Emergency Motion 4-5. The defense goes on to note that these people are "at special risk given their living situation." Id. at 5. These are challenges that cannot be denied, but as they relate to the issue of release, they are concerns not concrete enough to justify the release of Mr. Williams.

It is the Government that provides the specific details here. While the situation may change, as of March 20, 2020 "there are no cases of COVID-19" at Mr. Williams' detention facility. Gov't Opp'n 6. The Government correctly notes that the defense makes no suggestion that Mr. Williams has the virus, or that he has been exposed to the virus. Id. Mr. Williams is merely casting possibilities in light of his understandable apprehension. Aside from being an older person, Mr. Williams has expressed no other physical vulnerabilities. As the Government writes, detained persons with more compromised physical health have made similar arguments to no avail. See United States v. Martin, PWG 19-140, March 17, 2020 (D. Md.)(J. Grimm), ECF No. 209; United States v. Bilbrough, TDC 20-33, March 20, 2020 (D. Md.)(J. Sullivan), ECF

No. 76. The Court has also considered the reasoning in United States v. Jones, CCB 17-582, March 20, 2020, (D. Md.)(J. Coulson), ECF No. 136, wherein the defendant was pregnant, on prescribed medications, and seeking release due to COVID-19. The Court has reflected on all of the considerations and factors in play at the detention hearing held on February 11. Even with the pandemic that has befallen us, it does not change the calculus of detention here.

The Government has articulated in great detail the measures implemented by the facility where Defendant is housed. Gov't Opp'n 7-8. These measures are extensive and, up to the present moment, adequate as it appears the facility has a lower incidence of infection than the general population. Should the unfortunate event occur, the correctional authorities have in place a plan of action that should not be summarily embraced or discarded. Nor does it follow that a presumption of release materializes without more details about the impact upon Mr. Williams directly. Information regarding prisoner movements, his proximity to those infected, and other measures taken in response (or not) will be important factors to consider. As has been mentioned by this Court on several occasions, the Bail Reform Act requires an "individualized determination" about the appropriateness of release for each defendant.

In summary, Defendant has still failed to demonstrate by clear and convincing evidence that release is appropriate. The existence of the present pandemic, without more, is not tantamount to a "get out of jail free" card. Not even for the older person being detained. While there has been a change in conditions as a result of the pandemic, there has not been enough change to justify the release of Mr. Williams.

### III.    Conclusion

The Court is not persuaded that Defendant has demonstrated by clear and convincing evidence that he should be released from detention.  The combination of his age and the existence of COVID-19, standing alone, are not sufficient for the reasons stated above.  Accordingly, Defendant's Emergency Motion is DENIED.

So Ordered this 23rd day of March, 2020.

/s/
Charles B. Day
United States Magistrate Judge
